TEAMSTERS LOCAL 372, DETROIT MAILERS UNION LOCAL 2040; Newspaper Guild of Detroit Local 22; GCIU Local 289, Graphic Communications International Union; GCIU Local 13N, Graphic Communications International Union; Detroit Typographical Union Local 18, Communications Workers of America, Plaintiffs and Counter–Defendants,

v.

DETROIT NEWSPAPERS, Defendant and Counter–Plaintiff,

Asset Protection Team, Inc.; Huffmaster Associates, Inc.; City of Sterling Heights; Thomas Derocha, Individually and as Chief of Police of Sterling Heights; and Steve Duchane, Individually and as City Manager of Sterling Heights, Defendants,

United Auto Workers Doe Defendants, Counter–Defendants.

No. Civ.A. 95–40474.

United States District Court, E.D. Michigan, Southern Division.

Feb. 5, 1998.

of Detroit Local 22, Graphic Communications Intern. Union Local 289, Graphic Communications Intern. Union Local 13N, and Detroit Typographical Union Local 18, Communications Workers of America.

Robert J. Battista, Leonard M. Niehoff, Robin K. Luce, and Butzel Long, Detroit, MI, for Detroit Newspapers.

Theodore R. Opperwall, Dickinson, Wright, McKean & Cudlip, Bloomfield Hills, MI, William J. Dempster, Richard O. Duvall, and Edward V. Hickey, Holland & Knight, Washington, DC, for Asset Petroleum Team, Incorporated.

Theodore R. Opperwall, Dickinson, Wright, McKean & Cudlip, Bloomfield Hills, MI, William J. Dempster, Holland & Knight, Washington, DC, for Vance Intern., Inc.

Albert Addis, Gagleard, Addis & Imbrunone, Royal Oak, MI, for Huffmaster Associates, Inc.

Bert T. Ross, O'Reilly, Rancilio, Nitz, Andrews & Turnbull, P.C., Sterling Heights, MI, for City of Sterling Heights, Thomas Derocha, and Stephen Duchane.

## MEMORANDUM OPINION AND ORDER DISMISSING JOINT OBJECTIONS OF PLAINTIFFS/COUNTER–DEFENDANTS TO MAGISTRATE JUDGE'S ORDER GRANTING MOTION FOR LEAVE TO FILE SECOND AMENDED COUNTERCLAIM, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS'/COUNTER–DEFENDANTS' JOINT MOTION TO DISMISS

GADOLA, District Judge.

On August 27, 1997, Magistrate Judge Thomas Carlson issued an order granting a motion by defendant/counter-plaintiff, Detroit Newspaper Agency ("DNA"), for leave to file a second amended counterclaim. Currently before this court are joint objections to the Magistrate Judge's order filed by the six union plaintiffs/counter-defendants.[1] In

Samuel C. McKnight, John R. Canzno, Klimist, McKnight, Sale, McClow & Canzano, Southfield, MI, Elizabeth A. Grdina, Intern. Brotherhood of Teamsters, Legal Dept., Washington, DC, Stuart M. Israel, Miller, Cohen, Martens, Ice & Geary, P.C., Southfield, MI, William A. Wertheimer, Jr., Will Wertheimer Assoc., Royal Oak, MI, Mark H. Cousens, Mark H. Cousens Assoc., Southfield, MI, for Teamsters Local 372, Detroit Mailers Union Local 2040, Newspaper Guild

1. The six unions include the Teamsters Local 372; Detroit Mailers Union Local 2040; Newspaper Guild of Detroit Local 22; GCIU Local 289, Graphics Communications International Union; GCIU Local 13N, Graphics Communications International Union; and Detroit Typo-

the alternative, the Unions ask this court to dismiss the second amended counterclaim pursuant to Fed.R.Civ.P. 12(b)(6). For the reasons set forth below, this court will dismiss the Unions' joint objections and affirm the order of the Magistrate Judge. In addition, this court will grant, in part, and deny, in part, the motion to dismiss the second amended counterclaim.

## Factual Background

This case arises from the labor strike against DNA which first began an July 13, 1995. On October 2, 1995, the Unions filed a complaint against DNA asserting claims under 42 U.S.C. § 1983 and Michigan state law. On November 15, 1995, DNA filed a counterclaim alleging that the Unions violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), and conspired to violate § 1962(d). In Count I, DNA alleges that the Unions engaged in extortion and physical and verbal threats of extortion directed at DNA independent contractors, employees, and vendors; robbery resulting from theft of newspapers from subscribers, vendors, distribution racks, drop spots, and independent contractors; and arson by setting fire to and/or bombing vehicles at DNA facilities, placing and/or igniting pipe bombs in news racks, and throwing incendiary and explosive devices at and onto DNA property and/or at individuals working for DNA. Count Two alleges that the Unions conspired with and aided and abetted one another to accomplish the pattern of racketeering activity described in Count One.

The Unions filed four motions to dismiss the counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) on February 12, 1996. On April 2, 1996 Judge Friedman, to whom this case was originally assigned, denied the various motions to dismiss and ordered DNA to file a more detailed counterclaim and RICO case statement. DNA complied with this request and filed an amended counterclaim alleging 248 predicate acts in support of its RICO claim. On Au-

graphical Union 18, Communications Workers of America (collectively the "Unions").

2. The forty-four remaining acts include: Acts # 13, # 15, # 17, # 18, # 27, # 48, # 54, # 62, # 65, # 66, # 68, # 101, # 108, # 119, # 120,

gust 9, 1996, the Unions filed a joint motion to dismiss the defendants' amended RICO counterclaim. On October 24, 1996, the case was reassigned to this court. On January 21, 1997, DNA supplemented the original RICO case statement by alleging an additional 11 predicate acts bringing the total alleged predicate acts to 259.

On February 24, 1997, this court disposed of the Unions' joint motion to dismiss. In that order, this court dismissed 192 of the alleged predicate acts with prejudice and dismissed 23 acts without prejudice. Accordingly, only forty-four of the 259 alleged predicate acts remained.[2] *See Teamsters Local 372 v. Detroit Newspapers,* 956 F.Supp. 753 (E.D.Mich.1997).

As a part of its discussion, this court engaged in an analysis of whether many of the alleged predicate acts were preempted by the National Labor Relations Act. Ultimately, this court held that "any conduct which is obviously criminal [may] constitute a RICO predicate act." *Teamsters Local,* 956 F.Supp. at 762. This court noted that it would "not allow the Unions to hide behind the shield of the NLRA in an attempt to evade the effect of RICO for conduct that is criminal under any measure." *Id.* (citing *MHC v. International Union, United Mine Workers of America,* 685 F.Supp. 1370, 1380 (E.D.Ky.1988)).

This court then delineated which alleged predicate acts were not preempted because they contained allegations of "obviously criminal" conduct such as destruction of property, assault, arson and robbery. In addition, this court held:

Predicate Acts # 8, # 82, # 111, # 122, # 125, # 133, # 142, # 150, # 151, # 155, # 156, # 158, # 171, # 177, # 178, # 184, # 185, # 193, # 194, # 195, # 199, # 205, and # 206, although alleging destruction of property and assault, do so in a vague and/or conclusory manner and are therefore dismissed without prejudice.

# 126, # 129, #.131, # 134, # 135, # 143, # 144, # 145, # 148, # 152, # 153, # 159, # 168, # 179, # 181, # 183, # 187, # 190, # 197, # 198, # 200, # 212, # 218, # 220, # 233, # 239, # 248, # 249, and # 253.

*Id.*, n. 4. The instant motions primarily relate to a subset of the 23 alleged predicate acts dismissed without prejudice.

DNA has attempted to cure the defects in thirteen (13) of the alleged predicate acts dismissed for being vague and/or conclusory. DNA filed a motion to amend its counterclaim to include revised versions of those thirteen alleged predicate acts, and to include one additional alleged predicate act, # 260. The Unions oppose allowing DNA to amend the counterclaim at this stage. With respect to the 13 prior alleged predicate acts, the Unions' primary objection is that the proposed amendments would be futile because the revised allegations are equally vague and/or conclusory. The Unions also object to the proposed amendments on the basis that the Unions will be prejudiced by an amendment at this late date, and that DNA has had more than an ample opportunity to amend at this point.

Magistrate Judge Carlson held oral argument on the motion for leave to amend on August 20, 1997. At that time, Magistrate Judge Carlson indicated to the parties on the record that he was uneasy about deciding a motion for leave to amend based upon arguments that were essentially tailored for a motion to dismiss. He recognized that "futility" is a basis for refusing to allow an amendment, but also noted that this court had carefully considered the issue of vagueness in issuing its prior order. Accordingly, the Magistrate Judge opted to grant the motion for leave to amend, which would allow the Unions to pursue their arguments in a motion to dismiss in front of this court, which would be more familiar with the issues.

On September 15, 1997, the Unions filed objections to the Magistrate Judge's order and, in the alternative, a motion to dismiss the second amended counterclaim. DNA filed its response on October 1, 1997, and the Unions filed a reply on October 9, 1997.

**Discussion**

**1. The Magistrate Judge's order granting leave to amend**

■ The Unions assert that the August 27, 1997 order of the Magistrate Judge is clearly erroneous because he failed to consider all of the issues raised by the Unions in opposition to the motion for leave to amend. Specifically, the Unions contend that the Magistrate Judge did not properly address their arguments that 1) DNA had ample opportunity to amend prior to filing its second amended counterclaim, 2) amendment would be futile because the new allegations are equally vague and/or conclusory and 3) amendment at this stage would unfairly prejudice the Unions.

■ This court concludes that the Magistrate Judge's decision to grant the motion for leave to amend was proper, and therefore it will affirm that decision. This court notes at the outset that leave to amend "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). This court also has broad discretion in deciding whether to grant leave to amend pleadings. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The circumstances of this case dictate that this court should affirm the decision of the Magistrate Judge to grant DNA leave to file its second amended counterclaim.

First, while the Unions insist otherwise, this court is not yet prepared to say that DNA has repeatedly failed to cure deficiencies in its counterclaim such that its motion for leave to file an amendment should be refused. Prior to filing the second amended counterclaim currently before this court, DNA made only one attempt to amend. The procedural history in this case is complex, and the underlying allegations of misconduct on the part of the Unions involve a large number of people over a substantial period of time. Under the circumstances of this case, DNA is entitled to a second effort at amending its counterclaim.

Second, Magistrate Judge Carlson's decision to allow this court to address the issue of futility in the context of a motion to dismiss, rather than to address it himself in the context of the motion for leave to amend, seems the most advisable choice under the circumstances of this case. Magistrate Carlson was correct to point out that this court had engaged in a thorough analysis of which alleged predicate acts would remain in this case, and also that this court would have a

much better idea of what needed to be done to correct the deficiencies in the alleged predicate acts that this court found vague and/or conclusory in the February 24, 1997 order. As a result, the motion to dismiss in front of this court is the proper forum for the Unions' arguments.

Finally, this court does not find that allowing the amendments will significantly prejudice the Unions. First, they are able to fully address the futility arguments in the context of the motion to dismiss. In addition, any allegations that survive in this case will survive in a form that gives the Unions proper notice of the various conduct in the alleged predicate acts. Moreover, there is still ample time to conduct discovery in this case. Accordingly, this court does not find that the Unions are able to demonstrate prejudice to them that would justify denying DNA's motion for leave to amend its counterclaim.

Therefore, this court will dismiss the Unions' objections to the Magistrate Judge's August 27, 1997 order granting DNA leave to file its second amended counterclaim.

### 2. The Unions' joint motion to dismiss

 Federal Rule of Civil Procedure 12(b)(6) authorizes the district courts to dismiss any complaint (or counterclaim) which fails "to state a claim upon which relief can be granted." Rule 12(b)(6) affords plaintiff/counter-defendant unions an opportunity to test whether, as a matter of law, the defendant/counter-plaintiff DNA is entitled to legal relief on its counterclaim against plaintiff/counter-defendant unions even if everything alleged in the counterclaim is true. In applying the standards under Rule 12(b)(6) the court must presume all well-pleaded factual allegations in the counterclaim to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *Mayer v. Mylod,* 988 F.2d 635, 638 (6th Cir.1993); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir.1995) The court need not, however, accord the presumption of truthfulness to any legal conclusion, opinions or deductions, even if they are couched as

factual allegations. *Western Mining Council v. Watt,* 643 F.2d 618, 629 (9th Cir.1981); *Mitchell v. Archibald & Kendall, Inc.,* 573 F.2d 429, 432 (7th Cir.1978); *Sexton v. Barry,* 233 F.2d 220, 223 (6th Cir.1956) Dismissal for failure to state a claim is disfavored:

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). *See also Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir.1994) (stating that a motion to dismiss should be denied unless "it is clear that the plaintiff can prove no set of facts in support of [its] claim that would entitle [it] to relief.").

### a. The thirteen (13) alleged predicate acts dismissed by this court's February 24, 1997 order as vague and/or conclusory[3]

 The gravamen of the Unions' motion to dismiss with respect to the thirteen alleged predicate acts already dismissed by this court is that the amendments are equally vague and/or conclusory. For example, the Unions point to alleged predicate act # 8. In the amended complaint, alleged predicate act # 8 asserts:

> The Newspaper Union Defendants engaged in mass picketing at DNA's North Plant. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but not limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and person property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter

---

**3.** The specific alleged predicate acts are Acts # 8, # 111, # 122, # 133, # 142, # 151, # 158, # 177, # 178, # 184, # 185, # 193 and # 194.

or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities.

(Amended complaint, at ¶ 27.) In the second amended complaint, alleged predicate act # 8 asserts:

The Newspaper Union Defendants engaged in mass picketing at DNA's North Plant. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts **of extortion by threats and assaults, including but not limited to, the following: physically attacking the Sterling Heights police with picket signs, $2 \times 4$'s, and other objects; physically attacking the vehicles of DNA personnel (including employees and contractors) with picket signs, pieces of concrete and by hitting the vehicles; raising $2 \times 4$'s and simulating shooting toward DNA personnel; and throwing pieces of concrete at DNA personnel. During the course of these events, pickets made the following statements to DNA personnel. "Don't ever come out of that fence." "I'll break this over your ... head." "Get in there. You are dead." "Come on ..., get your ass outside that fence so we can kick your ... ass." "I guarantee you I'm going to get you.... I'm gonna shoot your legs out."**

(Second amended complaint, at ¶ 27 (emphasis added).) The Unions argue that the changes merely substitute one set of vague allegations for another. For example, the amended complaint alleges that the Unions wielded "clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices," while the second amended complaint alleges that the Unions used "picket signs, $2 \times 4$'s and other objects." The Unions argue that this is no less vague and/or conclusory than the charges contained in the amended com-

plaint. Further, the Unions argue that all thirteen of the alleged predicate acts are still subject to the same deficiencies.

In response, DNA argues that it is not required to include in its complaint every fact concerning these incidents of which it is aware. This court agrees. Upon further review, this court has reevaluated its prior decision with respect to these thirteen alleged predicate acts. The thirteen acts all involve altercations between large groups of people at various DNA facilities. Given the nature of the circumstances, it is not surprising that DNA is not able to come forth with detailed descriptions of specific conduct. However, this court does find that DNA has alleged "obviously criminal" activity, in the form of assault and destruction of property. It also appears that DNA has provided the Unions with enough specificity to accurately identify the conduct it believes supports its RICO claims in this case. Moreover, all doubt is removed with the addition of the amendments contained in the second amended counterclaim. Accordingly, this court finds that the earlier versions of the thirteen alleged predicate acts, *combined with* the revised versions, are sufficient to meet DNA's pleading burden in this case.[4]

Therefore, this court will deny the Unions' motion to dismiss with respect to these thirteen alleged predicate acts.

**b. Supplemental alleged predicate act # 260**

■ The supplemental alleged predicate act that DNA seeks to add at this time is divided into two separate incidents. The first incident is described as follows:

On May 9, 1997, as DNA employee 038 was driving on the freeway, Prainito and Schafranek drove up next to DNA employee 038, made an obscene gesture, then simulated a gun with their hands. Prainito and Schafranek also indicated "Bang" and "We are going to shoot you" as they followed DNA employee 038 for approximately 4 miles.

---

4. As Exhibit C to their brief in this matter, The Unions attached copies of the thirteen alleged predicate acts as they appear in both the amended complaint and the proposed second amended complaint. The Unions' Exhibit C is attached to this opinion.

(Second amended complaint, at ¶ 232.) While DNA asserts that this allegation comports with the requirements set forth by this court's February 24, 1997 order, this court finds that the conduct alleged is similar to what this court has described as "garden variety" labor dispute conduct in this case. *See Teamsters Local,* 956 F.Supp. at 761. In fact, this court finds the allegation contained in the first part of act # 260 to be materially equivalent to the allegation contained in act # 28, which was dismissed by this court as preempted by the NLRA. As a result, this court will dismiss this part of act # 260 as preempted by the NLRA for the reasons set forth in the February 24, 1997 order.

■ However, the second allegation in act # 260 clearly sets forth conduct that is not "garden variety." That portion of act # 260 alleges an assault that is "obviously criminal," and as such, withstands the Unions' joint motion to dismiss.

### 3. Stipulation and protective order

Also before the court is a stipulation and protective order submitted by the parties on December 18, 1997. The parties ask this court to enter an order limiting access to certain information that the parties may designate as "highly confidential" or "confidential." In the case of "highly confidential" information, the parties ask that access be limited to (a) legal counsel to the parties, (b) law firm staff reporting directly to such counsel, (c) the court and its staff and (d) process servers who are otherwise affiliated with the parties and who have been retained by counsel to serve process. In the case of "confidential" information, the parties ask that access be restricted to (a) legal counsel to the parties, (b) law firm staff reporting directly to such counsel, (c) the court and its staff and (d) individuals, including experts, with whom counsel must consult to effectively represent counsel's client.

While the parties have agreed on these terms, this court is reluctant to enter a protective order in this case. Specifically, this court is troubled by the fact that the parties in this case have resorted to federal court to resolve their dispute, and yet they wish to keep certain information related to this proceeding from the public. Without a further justification of the need to keep certain information under a protective order, this court is not inclined to allow the parties to seek the relief they desire in this court without making these proceedings fully public.

Accordingly, this court will require the parties to submit further argument supported by authority before it will enter the stipulated protective order.

### Conclusion

Therefore, this court having reviewed the submissions of the parties and being fully advised in the premises,

**IT IS HEREBY ORDERED** that the September 15, 1997 joint objections filed by plaintiffs/counter-defendants to the August 27, 1997 order of Magistrate Judge Carlson granting leave to file second amended counterclaim are **DISMISSED.**

**IT IS FURTHER ORDERED** that the August 27, 1997 order of Magistrate Judge Carlson granting defendant/counter-plaintiff leave to file second amended counterclaim is **AFFIRMED.**

**IT IS FURTHER ORDERED** that the September 15, 1997 motion to dismiss filed by the plaintiffs/counter-defendants is **GRANTED in part and DENIED in part** according to the terms set forth in this opinion.

**IT IS FURTHER ORDERED** that the parties in this case must submit briefs within ten (10) days of the date of entry of this order addressing why this court should enter the stipulation and protective order received by this court on December 18, 1997.

**SO ORDERED.**

### ATTACHMENT

Exhibit C

¶ 27 Predicate Act 8

### AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's North Plant. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA

facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but not limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

## SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's North Plant. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts **of extortion by threats and assaults, including, but not limited to, the following: physically attacking the Sterling Heights police with picket signs, $2 \times 4$'s, and other objects; physically attacking the vehicles of DNA, personnel (including employees and contractors) with picket signs, pieces of concrete and by hitting the vehicles; raising $2 \times 4$'s and simulating shooting toward DNA personnel; and throwing pieces of concrete at DNA personnel. During the course of these events, pickets made the following statements to DNA personnel. "Don't ever come out of that fence." "I'll break this over your \*\*\* head." "Get in there. You are dead." "Come on \*\*\* get your ass outside that fence so we can kick your \*\*\*." "I guarantee you I'm going to get you \*\*\*" "I'm gonna shoot your legs out."**

¶ 112 Predicate Act 111

## AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's North Plant. In

conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as .well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

## SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's North Plant. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts **of extortion by threats and assaults, including, but not limited to, the following: physically attacking the vehicles of DNA personnel (including employees and contractors) with picket signs, $2 \times 4$'s, rocks, and other objects; and by hitting the vehicles; throwing $2 \times 4$'s, signs, and other objects at DNA personnel. During the course of these events, pickets made the following statements to DNA personnel: "We're coming after you next." "Come on \*\*\* you are next." "You're going down. We'll take the \*\*\* place down, \*\*\***

¶ 122 Predicate Act 122

## AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's North Plant. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA

facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities.

### SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's North Plant. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts **of extortion by threats and assaults, including, but not limited to, the following: physically attacking the Sterling Heights police with** $2 \times 4$**'s, bottles, bricks, metal rods, and other objects; physically attacking the vehicles of DNA personnel (including employees and contractors) with picket signs, pieces of concrete, steel pipes, metal rods, rocks, and by hitting the vehicles, throwing rocks, pieces of cinder block, pieces of wood, metal rods, and incendiary devices at DNA personnel and/or property; and setting DNA vehicles on fire. During the course of these events, pickets made the following statements to DNA personnel:** "Go home." "You are gonna get it." "We'll be back you ***" "You *** are going to die."

¶ 130 Predicate Act 133

### AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's North Plant. In

conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

### SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's North Plant. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts **of extortion by threats and assaults, including, but not limited to, the following: physically attacking the vehicles of DNA personnel (including employees and contractors) with picket signs, rocks, sticks, and bottles; and erecting a barricade to the facility. During the course of these events, pickets made the following statements to DNA personnel.** "Come on *** let's go." "You little *** are gonna die." "You little pieces of shit are gonna die." "You *** You're gonna die." "You're gonna *** die."

¶ 137 Predicate Act 142

### AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Riverfront Plant. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picket-

ing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

## SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Riverfront Plant. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts **of extortion by threats and assaults, including, but not limited to, the following: physically attacking the vehicles of DNA personnel (including employees and contractors) with picket signs and opening a door to a DNA truck; physically attacking Detroit police officers with picket signs and other objects; throwing bottles, pieces of concrete, rocks, railroad spikes/ties, sticks, $2 \times 4$'s, picket signs, a trailer hitch ball, pineapples, tomatoes, eggs, clubs, and other objects, as well as liquids, at DNA personnel; constructing a barricade to the facility with a railroad tie or log. During the course of these events, pickets made the following statements to DNA personnel: Run \*\*\*, run." "\*\*\* you're going down." "Sooner or later you gotta come out of there." "They'll take your bodies out in EMS."**

¶ 142 Predicate Act 151

## AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Clayton Distribu-

tion center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

## SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Clayton distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts **of extortion by threats and assaults, including, but not limited to, the following: physically attacking the vehicles of DNA personnel (including employees and contractors) with picket signs and other projectiles; throwing rocks, bottles, ball bearings (sometimes using "wrist rockets"), golf balls, explosive and/or incendiary devices, eggs, bolts, pieces of wood, and railroad spikes at DNA personnel and/or property; assaulting DNA security personnel with picket signs and rocks; and constructing a barricade with bikes, tires and pieces of wood and a truck which the pickets overturned. During the course of these events, pickets made the following statements to DNA personnel: "I'm going to kill you. Did you hear me boy, I'm going to kill you." Pickets also repeatedly made death threats, including that they would "shoot" DNA personnel.**

¶ 147 Predicate Act 158

## AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Clayton distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

## SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Clayton distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts **of extortion by threats and assaults, including, but not limited to, the following: physically attacking the vehicles of DNA personnel (including employees and contractors) with picket signs, ball bearings, fists, rocks, bricks, cinder blocks, batteries, bottles, and sticks; pickets also attempted to overturn the vehicles attempting to cross the picket line; assaulting DNA security personnel with picket signs and clubs; throwing tires, rims, pieces of bicycles frames, rocks, clubs, balloons containing ink and/or urine, and other projectiles at DNA personnel; placing a lighted flare in the vehicle of a DNA employee; and constructing a barricade using old tires,** among other things, and which was set on fire. During the course of these events, pickets made the following statements to DNA personnel: "Next time we'll burn down the whole building." "You ain't going nowhere, you *** piece of shit." Pickets also repeatedly made death threats to DNA personnel.

¶ 165 Predicate Act 177

## AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Plymouth Township distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

## SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Plymouth Township distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts **of extortion by threats and assaults, including, but not limited to, the following: physically attacking the vehicles of DNA personnel (including employees and contractors) with picket signs, bats, rocks, and by hitting the vehicles; assaulting a DNA carrier and his vehicle with bricks, pickets signs and baseball bats; throwing**

rocks at DNA personnel and/or property, breaking several windows in the facility. During the course of these events, pickets made the following statements to DNA personnel: "You ain't coming out assholes." "Go home you piece of shit. Get the *** out of here." "Watch your back, boy." "We're out on strike *** get the hell out of here." Pickets also chanted: "We are the Union... ass kicking Union."

¶ 166 Predicate Act 178

### AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Oak Park distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

### SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Oak Park distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts of extortion by threats and assaults, including, but not limited to, the following: physically attacking the vehicles of DNA personnel (including employees and contractors) with rocks and other devices and slashing

the tires; throwing incendiary devices, rocks and wood at DNA personnel and/or property; assaulted a DNA security officer with picket sticks; and turned over and damaged a light tree. During the course of these events, pickets made the following statements to DNA personnel: "You're gonna die, boy." "Watch your back, scabbie. Incoming missile, buddy." "You make a real good target up there. Pretty hard to resist." Pickets also otherwise threatened the lives of DNA personnel."

¶ 169 Predicate Act 184

### AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Roseville distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

### SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Roseville distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts of extortion by threats and assaults, including, but not limited to, the following: assaulting DNA personnel with picket signs, ax handles, clubs and pepper spray; throwing rocks, concrete, ball bearings, and incendi-

ary devices at DNA personnel and/or property; turning over and damaging a light tree; erecting a barricade using construction blockade device, trees, pallets and other lumber; and smashing windows and overhead lights on a police vehicle. During the course of these events pickets made the following statements to DNA personnel: "Come on out, \*\*\*." Police sources indicate that pickets also threatened to kill DNA security personnel.

¶ 170 Predicate Act 185

### AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Centerline distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

### SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Centerline distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts of extortion by threats and assaults, including, but not limited to, the following: physically attacking the vehicles of DNA personnel (including employees and contractors)

with sticks and clubs, and kicking the vehicles; throwing concrete, rocks, wood, and unknown liquid substances at DNA personnel and/or property; assaulting DNA security officers with clubs and pieces of wood (some of which had nails and other sharp objects attached to them); and turning over and damaging a light tree. During the course of these events, pickets made the following statements to DNA personnel: "Get your \*\*\* ass in there". "Get out of here." "In the building, assholes." "Better get in the building."

¶ 175 Predicate Act 193

### AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Taylor distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

### SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Taylor distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts of extortion by threats and assaults, including, but not limited to, the following: physically attacking the vehicles of DNA personnel

(including employees and contractors) attempting to access the facility with clubs, picket signs and other pieces of wood, and by kicking the vehicles; throwing incendiary devices at DNA personnel and/or property; exhibiting a knife to personnel attempting to enter the facility and then puncturing the vehicle's tires; erecting a barricade to the facility by use of a railroad tie; throwing rocks, ball bearings and pieces of concrete at DNA personnel; breaking windows in the facility; pushing over and severely damaging a light tree; and attacking vehicles in the parking lot through the use of ax handles, baseball bats and other types of clubs and by puncturing vehicle tires. Pickets also entered 2 vehicles while they were still moving. One such vehicle ran into a ditch. During the course of these events, pickets made the following statements to DNA personnel: "Come on out, assholes." "See you again scabbies." "We'll be back, scabs."

¶ 176 Predicate Act 194

## AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Lincoln Park distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts, including but no limited to physically, attacking persons and/or their vehicles attempting to enter or exit the DNA facility, including wielding weapons such as clubs, sticks, metal rods, starnails, jackrocks, incendiary and explosive devices, as well as setting fire to DNA real and personal property. The Newspaper Union Defendants extorted and threatened with violence persons attempting to enter or exit DNA facilities. The Newspaper Union Defendants also extorted, threatened with violence, and attacked law enforcement authorities attempting to facilitate entry to or exit from DNA facilities."

## SECOND AMENDED COMPLAINT

The Newspaper Union Defendants engaged in mass picketing at DNA's Lincoln Park distribution center. In conducting mass picketing, the Newspaper Union Defendants formed a human wall to prevent ingress to and egress from the DNA facility. As part of their mass picketing, the Newspaper Union Defendants committed multiple predicate acts of extortion by threats and assaults, including, but not limited to, the following: physically attacking the vehicles of DNA personnel (including employees and contractors) attempting to access the facility with clubs, picket signs, and other pieces of wood; throwing incendiary devices at DNA personnel and/or property; throwing rocks at DNA personnel; turning over and severely damaging 2 light trees; turning a vehicle over on its side; erecting a barricade by the use of a large rock; and breaking windows in the facility, one by throwing a concrete block through it. During the course of these events, pickets made the following statements to DNA personnel: "Get the *** out of here." "We are your worst nightmare." "... shove that camera up your ass." "We'll kick your ass right back to where you came from." "You guys better count your blessings, if the officers [police] weren't here, we'd smoke your ass." Pickets also were led in a chant: "We are the Union ... scab kicking Union ... ass kicking Union."

¶ 232 Predicate Act 260

## SECOND AMENDED COMPLAINT (SUPPLEMENTAL ALLEGATION)

On May 9, 1997, as DNA employee 038 was driving on the freeway, Prainito and Schafranek drove up next to DNA employee 038, made an obscene gesture, then simulated a gun with their hands. Prainito and Schafranek also indicated "Bang" and "We are going to shoot you" as they followed DNA employee 038 for approximately 4 miles.

Some of these members engaged in similar extortionate conduct previously. As APT Officer 017 was working on August 13, 1996 at the Lafayette gate to the Detroit News

Building, Gene Schroll, Frank Prainito, Peter Prainito, and Steve Montagne approached the Lafayette street gate where Officer 017 was stationed. Montagne walked up to Officer 017 and spit on him. Peter Prainito took a picket sign from Frank Prainito and approached Officer 017 (trespassing on DNA property), swinging the sign in front of him and calling Officer 017 a "nigger". Frank Prainito then also trespassed onto DNA property, and approached Officer 017. Frank Prainito took the sign from Peter Prainito and said to Officer 017: "I want to be the first one to hit him" as he continued to approach. Frank Prainito continued to approach Officer 017 swinging the picket sign in front of him and calling Officer 017 a "nigger" and saying that he: *** [Officer 017's] mother last week" Frank and Peter Prainito were within 3 or 4 feet of Officer 017 when Officer 017 sprayed them with a water hose to defend himself. One of these pickets also threatened Officer 017 saying "I'll shove this picket sign up your ass." Peter and Frank Prainito charged with assault and battery; currently pending.