NATIONAL ACCIDENT INSURANCE
UNDERWRITERS, INC.,
Plaintiff,

v.

CITIBANK, FSB, Defendant.

AMERICAN NATIONAL INSURANCE
CO., Intervenor,

v.

Citibank, FSB, Defendant.

No. 02 C 3390.

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 20, 2004.

Michael J. O'Rourke, Mitchell Bruce Katten, Richard F. Linden, Brian Michael Dougherty, O'Rourke, McCloskey & Moody, Chicago, IL, for Plaintiff.

Robert F. Forrer, Wilson & McIlvaine, Todd A. Rowden, Joel A. Brodsky, Joseph H. Kim, Charles E. Harper, Jr., Quarles & Brady LLP, Chicago, IL, for Defendant.

## ORDER

GOTTSCHALL, District Judge.

Plaintiff National Accident Insurance Underwriters, Inc. ("NAIU") and intervenor plaintiff American National Insurance Company ("ANICO") have each sued Citibank, FSB ("Citibank") for conversion pursuant to the Uniform Commercial Code ("UCC"), 810 ILCS § 5/3–420. Plaintiffs' complaints against Citibank arise out of an alleged scheme by a NAIU employee, Robert Carter, to intercept over $10 million of premium checks payable to NAIU and to convert those funds to his own use.

Plaintiffs allege that Carter intercepted the premium checks and then altered the payee line by adding a "slash" (/) and additional payees such as "Sherman" or "Sherman Imports." Plaintiffs allege that, although he was a NAIU employee, Carter did not have authority to alter the checks or take control of the funds. To complete the fraud, Carter maintained a checking account at Citibank in the name of the added Sherman payee (the "Sherman Account"). Carter indorsed the altered checks and deposited them in the Sherman Account. Citibank accepted the altered checks, credited Carter's account and presented the checks to various drawee banks for payment.

Plaintiffs claim that Citibank is strictly liable for accepting the altered checks and crediting Carter's account. NAIU's and ANICO's complaints for conversion are virtually identical and seek recovery for the same altered checks. However, both NAIU and ANICO claim an exclusive ownership interest in the checks and, therefore, the exclusive right to recover from Citibank.

Citibank has pled numerous affirmative defenses to plaintiffs' conversion claims and has filed counterclaims against both

ANICO and NAIU.[1] Before the court are ANICO's and NAIU's respective motions to strike several of Citibank's affirmative defenses and to dismiss Citibank's counterclaims. For the reasons stated below, ANICO's and NAIU's respective motions to strike Citibank's affirmative defenses are granted in part and denied in part. Plaintiffs' respective motions to dismiss Citibank's counterclaims are granted in part and denied in part.

## ANALYSIS

When ruling on a motion to dismiss, the court must accept as true the allegations in the complaint and must draw all reasonable inferences from those allegations in favor of the non-moving party. *Bowman v. City of Franklin,* 980 F.2d 1104, 1107 (7th Cir.1992). The court may grant a motion to dismiss only if it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

 Motions to strike an affirmative defense are treated under the same legal standard as motions to dismiss. *Bobbitt v. Victorian House, Inc.,* 532 F.Supp. 734, 737 (N.D.Ill.1982). Federal Rule of Civil Procedure 12(f) provides that the court may strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from any pleading. Although motions to strike an affirmative defense are generally disfavored, the court will strike an affirmative defense as legally insufficient: if the plaintiff shows that the defendant could not possibly prove a set of facts under the affirmative defense that would defeat the complaint. *Id.* When considering a motion to strike, the court takes all well-pleaded facts as true, and views all allegations in the light most fa-

vorable to the non-moving party. *Ocean Atlantic Woodland Corp. v. DRH Cambridge Homes, Inc.,* No. 02–C–2523, 2003 WL 1720073, at *3 (N.D.Ill. Mar. 31, 2003).

### I. Plaintiffs' Motions To Strike Citibank's Affirmative Defenses

#### A. "Contributory Negligence" Under 810 ILCS § 5/3–406 (Second Affirmative Defense Against Both NAIU and ANICO)

In its Second Affirmative Defense, Citibank alleges that it should not be held liable in this case because plaintiffs' own negligence enabled Carter to alter the premium checks. Citibank's contributory negligence defense is founded on 810 ILCS § 5/3–406 which provides that "a person whose failure to exercise ordinary care substantially contributes to an alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection."

 Plaintiffs argue that Section 5/3–406 is inapplicable because contributory negligence is not a proper defense to a conversion claim. However, while a contributory negligence defense is not available in a conversion action under Illinois common law, *Lawyers Title Ins. Corp. v. Dearborn Title Corp.,* 904 F.Supp. 818, 821 (N.D.Ill.1995), the UCC has modified the common law, providing special rules regarding the allocation of liability in situations such as this. *See Kerrigan v. American Orthodontics Corp.,* 960 F.2d 43, 45 (7th Cir.1992) (citing UCC § 3–406 as an example of several "special rule[s] absolving agents and bailees of liability for con-

---

1. Citibank has also brought a third-party complaint against several individuals, including Robert and Virginia Carter, for fraud and unjust enrichment. Citibank's third-party complaint is not a subject of the instant motions.

version when they act in good faith ... and observe 'reasonable commercial standards' "); *Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 850 (2d Cir.1989). Specifically, Section 5/3–406, when read in context, alters the common law regarding available defenses to conversion claims.

The purpose of Section 3–406 "is to encourage the free circulation of commercial paper by applying thereto the principle that as between two innocent persons the one who is negligent should bear the loss caused by the wrongdoing of a third person." *Menichini v. Grant,* 995 F.2d 1224, 1234 (3d Cir.1993). Although some have interpreted Section 5/3–406 as creating a defense only for the benefit of drawee banks as against the maker or drawer of the check, the court finds that the statute was not drafted so narrowly. *See Lund's,* 870 F.2d at 850. Section 5/3–406 unambiguously protects any "person" who pays the instrument in good faith. *Id.*; 810 ILCS § 5/3–406(a).

The court finds that Section 5/3–406 is a proper defense to a conversion claim brought under 810 ILCS § 5/3–420 and that Citibank has pled that defense in sufficient detail to place plaintiffs on notice of the nature of its defense. Plaintiffs' respective motions to strike Citibank's Second Affirmative Defense are, therefore, denied.

### B. *In Pari Delicto,* Unclean Hands, Failure to Mitigate Damages, and Negligent Hiring, Retention and Supervision.

While Citibank is allowed to plead a contributory negligence affirmative defense based on 801 ILCS § 5/3–406, Citibank's common law defenses based on contributory negligence are precluded. Although given different labels and couched under various theories, Citibank's *In Pari Delicto,* Unclean Hands, Failure to Mitigate, and Negligent Hiring, Reten-

tion and Supervision defenses simply reiterate Citibank's argument that plaintiffs' negligence caused their loss. Common law contributory negligence defenses are not available in actions for conversion under 810 ILCS § 5/3–420. *See, e.g., Lawyers Title,* 904 F.Supp. at 821. The UCC has changed the common law by providing special rules for allocation of liability for claims of conversion of instruments. However, the bar against common law contributory negligence defenses to conversion still applies.

Citibank's affirmative defenses of *In Pari Delicto* (4th Aff. Def. to NAIU's Compl., 5th Aff. Def. to ANICO's Compl.), Unclean Hands (5th Aff. Def. to NAIU's Compl.; 6th Aff. Def. to ANICO's Compl.), Failure to Mitigate Damages (7th Aff. Def. to NAIU's Compl.; 9th Aff. Def. to ANICO's Compl.), and Negligent Hiring, Retention and Supervision (9th Aff. Def. to NAIU's Compl.) are each stricken.

### C. Holder In Due Course (Sixth Affirmative Defense Against NAIU; Eighth Affirmative Defense Against ANICO)

Citibank also alleges that it cannot be held liable for conversion because it was a holder in due course of the altered checks. The UCC provides that a person who takes an instrument as a holder in due course—*i.e.* took the instrument for value in good faith with no notice of any unauthorized signature or alteration—takes the instrument free of any possessory claim to that instrument. 810 ILCS § 5/3–306. Therefore, holder in due course status is a defense to a conversion claim under the UCC.

Plaintiffs argue that Citibank's holder in due course defense should be stricken because it simply duplicates Citibank's denial of plaintiffs' allegation that Citibank accepted checks that were obvi-

ously altered. However, that is not a basis for striking Citibank's defense. To prove its Section 5/3–420 claim, plaintiffs need not establish that the alterations to the premium checks were obvious. Moreover, Citibank's denial that the alterations were obvious does not amount to a plea of holder in due course status. Rather, it is Citibank's burden to plead affirmatively its holder in due course defense as it will be Citibank's burden to prove its good faith. *Blackwell v. American Airlines, Inc.*, No. 98–C–6856, 2003 WL 732574, *4 (N.D.Ill. March 3, 2003) (holding that defenses should not be stricken under circumstances where it is "difficult to determine whether a particular matter should be plead affirmatively … The pleader is usually given the benefit of the doubt when setting forth a purported affirmative defense").

Plaintiffs' motion to strike Citibank's Holder in Due Course Affirmative Defense is, therefore, denied.

### D. Respondeat Superior (Seventh Affirmative Defense Against ANICO)

■ In its Seventh Affirmative Defense against ANICO, Citibank alleges that ANICO cannot hold Citibank liable for its loss because ANICO is responsible for the wrongful acts of its agents under the doctrine of *respondeat superior*. Citibank's defense misapplies the *respondeat superior* doctrine. That doctrine provides that, under certain circumstances, employers must answer to injured *third persons* for injuries caused by their employees. However, in this defense Citibank does not seek to hold ANICO responsible for damages suffered by Citibank. Rather, Citibank argues that under the doctrine of *respondeat superior*, ANICO is responsible for damages that *ANICO* suffered at the hands of its own agent. Citibank does not cite, and the court cannot find, any authority allowing a *respondeat superior*

defense to be pled under those circumstances. Citibank's *respondeat superior* affirmative defense is, therefore, stricken.

### E. Authorization and Ratification (Eighth Affirmative Defense Against NAIU)

■ NAIU argues that Citibank's Eighth Affirmative Defense for Authorization and Ratification should be dismissed for failure to plead sufficient supporting facts. In its defense, Citibank argues that it should not be held liable for NAIU's losses because NAIU effectively ratified Carter's fraud. Specifically, Citibank alleges that (1) an NAIU customer informed NAIU that "Sherman" was an alternative payee on the customer's premium check, (2) NAIU knew about the Sherman account at Citibank and (3) NAIU informed the customer that the Sherman account was a legitimate alternative trust account for the deposit of premiums. In sum, Citibank claims that NAIU was on notice of Carter's fraud but did nothing to correct the problem. Accepting the facts pled in Citibank's pleading as true and construing all reasonable inferences from those facts in Citibank's favor, the court finds that Citibank has pled sufficient facts to put NAIU on notice of the nature of its defense. Nothing more is required.

NAIU's motion to strike Citibank's Authorization and Ratification Affirmative Defense is denied.

## II. Plaintiffs' Motions To Dismiss Citibank's Counterclaims

### A. Interpleader / Declaratory Judgment (Count I Against NAIU and ANICO)

Citibank's first Counterclaim for "Interpleader and Declaratory Judgment" requests that plaintiffs interplead amongst themselves to resolve the dispute between ANICO and NAIU over which company

owns the allegedly converted funds. Citibank argues that the court should resolve that question before addressing the issue of Citibank's liability. However, Citibank's counterclaim does not meet the pleading requirements for either a Fed. R.Civ.P. 22 or statutory interpleader action and, therefore, must be dismissed.

■ At the outset, the premise of Citibank's interpleader action is flawed. Claims for interpleader are designed to allow neutral stakeholders to resolve competing claims that could expose the claimant to "double or multiple liability." Fed. R.Civ.P. 22. However, the danger of multiple liability is not present in this case. Plaintiffs are litigating their claims against Citibank in the same lawsuit and have admitted that their claims are mutually exclusive. In other words, plaintiffs acknowledge that Citibank cannot be held liable for the same check twice.

■ Moreover, Citibank's counterclaim does not meet the requirements for statutory interpleader under 28 U.S.C. § 1335. To bring a statutory interpleader claim, the claimant must first pay the disputed funds into the registry of the court or provide a bond in an amount that the court deems proper. 28 U.S.C. § 1335(a)(2). Since that has not occurred in this case, Citibank has no viable claim under that statute.[2]

Because Citibank has not pled a valid claim for interpleader under either Fed. R.Civ.P. 22 or 28 U.S.C. § 1335, Counts I of Citibank's counterclaims against NAIU and ANICO are dismissed.

### B. Unjust Enrichment (Count IV against NAIU; Count II against ANICO)

■ In Count IV of its counterclaim against NAIU, Citibank alleges that (1) during the course of his fraud, Carter made claims payments to plaintiffs' customers from the Sherman account, (2) NAIU benefited from those payments and, therefore, (3) if Citibank is held liable to ANICO in this action, NAIU should not be allowed to retain that benefit. Citibank makes a virtually identical counterclaim against ANICO, alleging that, if Citibank is held liable to NAIU, ANICO should not be allowed to retain any payments made by Carter for NAIU's benefit.

This counterclaim is analytically distinct from an action for contribution. Citibank does not allege that NAIU or ANICO are liable as joint tortfeasors. Rather, Citibank alleges that (1) Citibank paid the allegedly converted checks when it credited Carter's account, (2) some of those payments—i.e. the amounts Carter didn't keep for himself—have benefited plaintiffs and (3) if Citibank is forced to pay those checks a second time to satisfy a judgment in this case, plaintiffs will have realized a windfall to which they are not entitled.

The court finds that Citibank has placed plaintiffs on notice of the nature of its unjust enrichment claims and, therefore, plaintiffs' respective motions to dismiss those claims are denied.

### C. Negligent Supervision (Count II Against NAIU)

■ Count II of Citibank's counterclaim against NAIU alleges that NAIU was negligent in failing to supervise Carter

---

**2.** Citibank's overarching argument that the court should bifurcate the issues of this case to promote efficient resolution of this matter is without merit. Regardless of the resolution of ANICO's and NAIU's competing ownership interests, the court must still address the question whether Citibank's conduct constitutes conversion. The issues of this case are straightforward and judicial efficiency will not be served through piecemeal litigation.

to prevent his fraud. Citibank alleges that "Citibank has been harmed by NAIU's negligent supervision of Carter. As a result of NAIU's negligent supervision of Carter, ANICO seeks to hold Citibank liable for the[ ] allegedly converted funds. Citibank has necessarily incurred significant expenses, including attorneys' fees and costs."

Citibank's counterclaim appears to be one for contribution based on NAIU's alleged contributory negligence. As the court held in its January 28, 2004 Order, Citibank is not necessarily barred from seeking contribution in this case. Citibank may pursue a contribution claim within the meaning of the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/0.01, *et seq.*, so long as it is not found to have engaged in intentional misconduct.

However, Citibank's counterclaim makes no express mention of contribution and does not make any allegations indicating that NAIU is a joint tortfeasor with Citibank. Therefore, the precise nature of Citibank's claim is unclear: is this a direct negligence claim against NAIU based on damages suffered by Citibank or is this a contribution action against NAIU seeking to recover in the event Citibank is held liable to ANICO? In either event, Citibank's pleading is deficient. If this is a direct claim against NAIU seeking recovery of Citibank's attorneys fees, then Citibank's claim must fail because its damages are speculative at best and, therefore, its claim is not ripe. If this is a contribution claim, it should be pled as such: Citibank must place NAIU on notice of the nature of its claim that NAIU is "subject to liability in tort" *to ANICO*. In other words, Citibank must inform NAIU of the basis for its claim that NAIU is a joint tortfeasor with Citibank.

Citibank's counterclaim for Negligent Supervision against NAIU (Count II against NAIU) is, therefore, dismissed without prejudice.

### D. Failure to Supervise Agent (Count III Against ANICO)

■ Count III of Citibank's counterclaim against ANICO for Failure to Supervise is virtually identical to the Negligent Supervision counterclaim against NAIU. Citibank alleges that ANICO negligently failed to monitor the activities of its agents, NAIU and Carter, and failed to audit the premium trust fund in which its customers' premium payments were held. It alleges further that "[a]s a result of ANICO's negligence and failure to exercise its duties, ANICO has caused any loss NAIU now seeks to recover from Citibank. In addition, Citibank has necessarily incurred significant expenses, including attorneys fees and costs."

As was the case with Citibank's negligence counterclaim against NAIU, the nature of Citibank's Failure to Supervise counterclaim against ANICO is unclear. Again, Citibank's claim appears to be couched as a contribution claim. However, Citibank does not allege that ANICO was a joint tortfeasor with Citibank or that ANICO owed a duty of care to NAIU. Such a claim would be difficult to make: it would require a finding that ANICO owed a duty of care to NAIU to monitor NAIU's activities to prevent NAIU's own employees from committing fraud. Perhaps for that reason, Citibank does not contest ANICO's argument that Citibank cannot plead a valid contribution claim against ANICO.

■ Rather, in its response, Citibank argues that this is a direct claim against ANICO for breach of duty owed Citibank. If that is the case, Citibank's claim fails for the same reason that its negligence counterclaim against NAIU fails: Citibank's

728

pleadings reflect that it has not suffered a quantifiable injury.

Citibank's counterclaim against ANICO for Failure to Supervise Agent is dismissed.

### E. *Respondeat Superior* (Count III against NAIU; Count IV against ANICO)

Citibank's *Respondeat Superior* counterclaims are, again, essentially claims for contribution. In its claim against NAIU, Citibank alleges that, if it is held liable to ANICO, NAIU should also be held liable for the misconduct of its employee. Citibank makes a similar claim against ANICO. However, *respondeat superior* liability attaches only if the employee was acting within the scope of his employment at the time of his misconduct. "For an employer to be vicariously liable for an employee's torts under [that] doctrine …, the torts must have been committed within the scope of employment." *Pyne v. Witmer*, 129 Ill.2d 351, 135 Ill.Dec. 557, 543 N.E.2d 1304, 1308 (1989). An employee's actions are within the scope of his employment if they: (1) are "of the kind he is employed to perform"; (2) "occur[ ] substantially within the authorized time and space limits" and (3) are "actuated, at least in part, by a purpose to serve the master." *Id.* If Citibank is held liable in this case, the *respondeat superior* doctrine simply cannot apply given the facts as pled by Citibank. It strains reason to contend that an employee that steals millions of dollars worth of checks payable to his employer is somehow acting to serve that employer. Citibank's *Respondeat Superior* counterclaims (Count III against NAIU; Count IV against ANICO) are, therefore, dismissed.

### CONCLUSION

For the foregoing reasons, plaintiffs' respective motions to strike Citibank's affirmative defenses are granted in part and denied in part. Citibank's Fourth, Fifth, Seventh and Ninth Affirmative Defenses to NAIU's complaint and its Fifth, Sixth and Ninth Affirmative Defenses to ANICO's complaint are stricken. Plaintiff's respective motions to dismiss Citibank's counterclaims are each granted in part and denied in part. Counts I, II and III of Citibank's Counterclaim against NAIU and Counts I, III and IV of its Counterclaim against ANICO are dismissed.