**In re David S. JARJISIAN, Debtor.**

**Community Banks, Successor by Merger to Community Banks, N.A., Plaintiff,**

**v.**

**Start Properties, II, LLC, Start Properties, LLC, David S. Jarjisian and Victoria A. Jarjisian, Defendants.**

**Bankruptcy No. 02–15711 SR. Adversary No. 04–0659.**

United States Bankruptcy Court, E.D. Pennsylvania.

Sept. 13, 2004.

---

Dexter K. Case, Reading, PA, for Debtor.

## Opinion

STEPHEN RASLAVICH, Bankruptcy Judge.

### Introduction

Before the Court is the Plaintiff's Motion to Dismiss Debtor's Affirmative Defenses and Counterclaim Pursuant to F.R.C.P. 12(b)(6) and L.B.R. 7005–1. The Debtor has filed an Answer opposing the Motion. For the reasons set forth below, the Court will grant the Motion.

### Background

Community Banks ("the Bank") had made a loan to the Debtor's corporation. *See* Answer, Affirmative Defenses and Counterclaim, ¶ 1. The loan was secured by a mortgage on commercial real estate

owned by the corporation. *Id.* As additional collateral, the Debtor guaranteed the loan and gave the Bank a second mortgage on his home. *Id.* ¶ 9. After the Bank foreclosed on the mortgage on the commercial real estate, it filed a Petition to Fix Fair Market Value in state court. Motion, ¶ 7. The parties agreed to removal of the petition to the Bankruptcy Court. *Id.* ¶ 8; Transcript ("T") 3, 7.

The Debtor has filed a response to the petition. The response included allegations titled *Affirmative Defenses and Counterclaim.* The Bank moves to dismiss those new allegations under F.R.C.P. 12(b)(6). The Bank argues that any response to its petition is limited to the value of the property sold, any prior liens, and the potential entitlement of the petitioner to any special allocation. Motion ¶ 10. The Debtor disagrees maintaining that the Bankruptcy Code and Rules expand the issues to include the extent of any secured claim that the Bank may have against the Debtor as a co-obligor.

### The Legal Standard

The Bank brings this challenge under Rule 12(b)(6) which provides for dismissal of a claim for failure to state a claim upon which relief can be granted. *See* F.R.C.P. 12(b)(6) *incorporated by* B.R. 7012. To the extent that the Bank challenges the legal sufficiency of the Counterclaim, it is proceeding under the correct subdivision. *See Teamsters Local 372 v. Detroit Newspapers,* 993 F.Supp. 1052, 1056 (E.D.Mich. 1998) (judging the sufficiency of a counterclaim by Rule 12(b)(6)); *Reeves v. American Broadcasting Cos.,* 580 F.Supp. 84, 89 (S.D.N.Y.1983), *aff'd,* 719 F.2d 602 (2d Cir. 1983) (stating that Rule 12(b)(6) applies to a counterclaim); *see also* 2 Moore's Federal Practice § 12.34[1][a] (Matthew Bender 3d ed.); 6 Wright, Miller & Kane, *Federal Practice and Procedure,* Civil 3d § 1407. However, the Bank also challenges the affirmative defenses. A different subdivision of Rule 12 applies to defenses:

> **(f) Motion to Strike.** Upon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading *any insufficient defense* or any redundant, immaterial, impertinent, or scandalous matter.

F.R.C.P. 12(f)(emphasis added). A motion to strike under Rule 12(f) is the "primary procedure" for objecting to an insufficient defense. *United States v. Marisol, Inc.,* 725 F.Supp. 833, 836 (M.D.Pa.1989); Wright & Miller, *supra* at § 1380; 2 *Moore's supra* at § 12.37 ("By its express inclusion in Rule 12(f), a motion to strike is the proper means for attacking the legal insufficiency of a defense."). Such a motion eliminates insufficient defenses and saves the time and expense which would otherwise be spent in litigating issues which would not affect the outcome of the case. *United States v. Geppert Bros., Inc.,* 638 F.Supp. 996, 998 (E.D.Pa.1986) (*citing Narragansett Tribe v. Southern Rhode Island Land Development Corp.,* 418 F.Supp. 798, 801 (D.R.I.1976)).

Challenges to both a counterclaim and an affirmative defense operate from the same premise: that neither are *legally* sufficient. *See National Accident Insurance Underwriters v. Citibank, FSB,* 333 F.Supp.2d 720, 722, 2004 WL 1926213 *1 (N.D.Ill.2004) *citing Bobbitt v. Victorian House, Inc.,* 532 F.Supp. 734, 737 (N.D.Ill. 1982). ("Motions to strike an affirmative defense are treated under the same legal standard as motions to dismiss."). *See Sony Fin. Servs., LLC v. Multi Video Group, Ltd.,* 2003 WL 22928602 *8 (S.D.N.Y.) ("The standard that applies to a

motion to strike is the 'mirror image' of the standard on a 12(b)(6) motion to dismiss for failure to state a claim."). The Court will therefore apply the well established standard for testing the legal sufficiency of a claim: "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Rocks v. Philadelphia,* 868 F.2d 644, 645 (3d Cir.1989). All well-pleaded factual allegations in the complaint must be taken as true. *Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Rocks,* 868 F.2d at 645. The court must draw all reasonable inferences from the allegations and view them in the light most favorable to the non-moving party. *Rocks,* 868 F.2d at 645. This requires that the Court begin with an analysis of the controlling law.

### Analysis

#### Deficiency Judgments in Pennsylvania

The Pennsylvania Deficiency Judgment Act specifically sets forth what a lender must do to preserve any deficiency claim after it purchases a property at a sheriff's sale:

> (a) General rule.—Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of the real property sold. *The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered.*

42 P.S. § 8103(a) (emphasis added). Essentially, the petition is a continuation of the foreclosure proceeding. *See Citizens National Bank v. Gold,* 439 Pa.Super. 254, 259, 653 A.2d 1245, 1247 (Pa.Super.1995). The applicable rule of procedure demonstrates how limited the subject matter at issue is:

> (a) The petition shall set forth:
>
> (1) the name and address of the judgment creditor,
>
> (2) the name and last known address of each respondent,
>
> (3) a statement that the petition is filed pursuant to Section 8103(a) of the Judicial Code,
>
> (4) the court and number of the execution proceedings, the original judgment and any judgment obtained by transfer,
>
> (5) the date the property was struck down to the successful bidder and the date the sheriff's deed was delivered,
>
> (6) a description of the real property and its location,
>
> (7) the fair market value of the real property,
>
> (8) a description of all prior lien amounts if the petitioner desires credit for such amounts,
>
> (9) if the petition requests a special allocation, a statement that the judgment creditor is a nonconsumer judgment creditor;
>
> (10) any special allocation required by Section 8103(f) of the Judicial Code, and
>
> (11) a request that the court fix the fair market value of the real property at the value set forth in the petition and that the court determine any prior lien amounts and any special allocation as set forth in the petition.

Pa.R.C.P. 3282(a).

#### Removal of Cases To Bankruptcy Court

After the petition was filed, the parties agreed to remove it to this Court. The

United States Code provides for removal of bankruptcy matters to the district courts:

A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil *action is pending, if such district court has jurisdiction of such claim or cause of* action under section 1334[1] of this title.

28 U.S.C. § 1452(a) (emphasis added). A bankruptcy court has jurisdiction to "hear and determine all cases ... and core proceedings under title 11 of the United States Code." 28 U.S.C. § 157(b)(1). Core proceedings include:

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

. . .

(K) determinations of the validity, extent, or priority of liens;

. . .

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

*Id.* § 157(b)(2)(A), (B), (K), and (O). The Debtor maintains that once the deficiency claim is fixed, the Bank will file a claim against the Debtor, who guaranteed the loan and gave the Bank a second mortgage on his home.[2] T –7. That must necessarily impact this estate and it explains why the parties agreed to removal. *See McCartney v. Integra National Bank North,* 106 F.3d 506, 512 (3d Cir.1997) (holding that a debtor should not be burdened by state court litigation when deficiency judgment actions impacting on debtor's estate can be settled in bankruptcy forum). What the parties disagree on is whether the Debtor's response may request affirmative relief, to wit, that any potential claim of the Bank against the Debtor resulting from the foreclosure be voided now. A determination of this question first requires the Court to delve further into the Deficiency Judgment Act.

*The Scope of a Challenge to a Petition to Fix Fair Market Value*

■ Any response to the petition is limited to the same issues in the original filing:

(c) Action on petition.—

(1) If no answer is filed within the time prescribed by general rule, or if an answer is filed which does not controvert

---

**1.** That statute provides:
(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
(b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334.

**2.** For its part, the Bank responded that it is yet unsure as to whether it will file a claim against the Debtor or proceed exclusively against his non-debtor wife, who is also liable on the loan. T–9.

the allegation of the fair market value of the property as averred in the petition, the court shall determine and fix as the fair market value of the property sold the amount thereof alleged in the petition to be the fair market value.

(2) If an answer is filed controverting the averment in the petition as to the fair market value of the property, but no testimony is produced at the hearing supporting such denial of the fair market value, the court shall determine and fix as the fair market value of the property sold the amount thereof alleged in the petition to be the fair market value.

(3) If an answer is filed alleging as the fair market value an amount in excess of the fair market value of the property as averred in the petition, the judgment creditor may agree to accept as the fair market value of the property the value set up in the answer and in such case may file a stipulation releasing the debtors, obligors and guarantors, and any other persons liable directly or indirectly for the debt, and the owners of the property affected thereby, from personal liability to the judgment creditor to the extent of the fair market value as averred in the answer, less the amount of any prior liens, costs, taxes and municipal claims not discharged by the sale, and also less the amount of any such items paid at distribution on the sale.

(4) If an answer is filed and testimony produced setting forth that the fair market value of the property is more than the value stated in the petition, the court shall hear evidence of and determine and fix the fair market value of the property sold.

42 P.S. § 8103(c)(1)-(4). Once fair market value is established, the Court can determine to what extent a deficiency claim survives:

> After the hearing, if any, and the determination by the court under paragraph (1), (2) or (4) of the fair market value of the property sold, then, except as otherwise provided in subsection (f)[3], the debtor, obligor, guarantor and any other person liable directly or indirectly to the judgment creditor for the payment of the debt shall be released and discharged of such liability to the judgment creditor to the extent of the fair market value of said property determined by the court, less the amount of all prior liens, costs, taxes and municipal claims not discharged by the sale, and also less the amount of any such items paid at the distribution on the sale, and shall also be released and discharged of such liability to the extent of any amount by which the sale price, less such prior liens, costs, taxes and municipal claims, exceeds the fair market value as agreed to by the judgment creditor or fixed and determined by the court as provided in this subsection, and thereupon the judgment creditor may proceed by appropriate proceedings to collect the balance of the debt.

42 P.S. § 8103(c)(5). The corresponding rule of procedure reflects the same limited scope of the proceeding:

> If an answer is filed which denies the allegations in the petition as to the fair market value, the prior lien amounts or the entitlement of the petitioner to any special allocation, the trial shall be limited to such of those issues as are raised by the answer, which shall be heard by a

---

**3.** This subsection deals with partial recourse and guaranteed obligations. Where the creditor has partial recourse, the fair market value will be applied first to the non-recourse portion. Likewise, where the debt is guaranteed, all liability for the portion not guaranteed will be satisfied first. 42 P.S. § 8103(f).

judge sitting without a jury in accordance with Rule 1038.

Pa.R.C.P. 3285. Both the statute and rule confirm that the issues triable in the petition are the value of the property, the existence of prior liens, and allocation of the value to primary and co-liable obligors. *See* 13 *Pa. Standard Practice 2d* § 75:150 ("Preliminary objections cannot be filed in response to the petition."); *see also Pennsy Supply, Inc. v. Peters,* 30 D. & C.2d 690, 692, 1963 WL 6287 (1963) (dismissing preliminary objection to petition in the nature of a motion for a more specific complaint).

■ The limitations placed on the petition's subject matter dictate that affirmative defenses and counterclaims be likewise prohibited. The Third Circuit has defined an "affirmative defense" to mean a "matter asserted by defendant which, assuming the complaint to be true, constitutes a defense to it. [It is a] response to a plaintiff's claim which attacks the plaintiff's [legal] right to bring an action, as opposed to attacking the truth of claim." *National Union Fire Ins. Co. v. City Savings, F.S.B.,* 28 F.3d 376, 393 (3d Cir. 1994). The same case defined "counterclaim" as "[a] claim presented by a defendant in opposition to or deduction from the claim of the plaintiff." *Id.* at 394. Neither pleading would dispute an element essential to the original cause of action. Had the petition remained in state court then, any affirmative defense or counterclaim would be barred. The question thus becomes: What effect, if any, does removal of the petition have on the scope of the issues triable?

*The Effect of Removal on the Petition*

■ The Debtor maintains that once removed to the bankruptcy court, the petition is governed by both the Bankruptcy Code and Rules. T–7. He points to Rule 9027(g) which provides that the Rules of Part VII of the Federal Rules of Bankruptcy Procedure—the adversary proceeding rules—apply to a removed case "and govern procedure after removal." B.R. 9027(g). But the operative word in the rule here is *procedure;* the rule does not address what effect removal has on the applicable substantive law. The answer to that question requires further analysis.

The act of removal itself does not alter the state law rights at issue. Contrary to Debtor's assertion, the cases do not make clear that Federal substantive law applies.[4] The applicable state substantive law remains the rule of decision where federal law does not specifically provide otherwise:

> The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply.

28 U.S.C. § 1652. *See Erie R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82

---

4. Neither is Debtor helped by his reference to the Supreme Court's decision in *Granny Goose Foods, Inc. v. Teamsters Local No. 70,* 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). That case discussed the effect of removal upon a case in which the state court had issued a restraining order against a labor union. The restraining order was of unlimited duration. The petitioner-employer was arguing that removal extended the order indefinitely. The Supreme Court disagreed stating that "federal rather than state law govern the future *course of proceedings,* notwithstanding state court orders issued prior to removal." *Id.* at 437, 94 S.Ct. at 1123 (emphasis added). Although the High Court found that the order has already expired under state law, it would have otherwise been subject to the time limits for such relief under F.R.C.P. 65(b). The term *course of proceedings* connoted procedural and not substantive law.

L.Ed. 1188 (1938) ("except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case [in federal court] is the law of the state") (*overruling Swift v. Tyson*, 16 Pet. 1, 41 U.S. 1, 10 L.Ed. 865 (1842)); *Highlands Ins. Co. v. Hobbs Group, LLC*, 373 F.3d 347, 351 (3d Cir.2004); *see also* 14 *Moore's supra* at § 81.10[1]. Is there a Bankruptcy Code provision that preempts the Deficiency Judgment Act here?

*Preemption*

 Article VI of the Constitution provides:

> [T]he Laws of the United States ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, cl. 2. Constitutional authority is vested in Congress "[t]o establish ... Uniform Laws on the subject of Bankruptcies throughout the United States." *Id.*, Art. I, § 8, cl. 4. "Where Congress has chosen to exercise its authority, contrary provisions of state law must accordingly give way." *In re Roach*, 824 F.2d 1370, 1373 (3d Cir.1987) *citing Johnson v. First National Bank of Montevideo*, 719 F.2d 270, 273 (8th Cir.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). Nonetheless, "the usual rule is that congressional intent to pre-empt will not be inferred lightly. Preemption must either be explicit, or compelled due to an unavoidable conflict between the state law and the federal law." *Penn Terra Ltd. v. Department of Environmental Resources*, 733 F.2d 267, 272 (3d Cir.1984); *accord In re Quanta Resources Corp.*, 739 F.2d 912, 915 (3d Cir. 1984). *See also Stellwagen v. Clum*, 245 U.S. 605, 613, 38 S.Ct. 215, 217, 62 L.Ed. 507 (1918) ("state laws are ... suspended only to the extent of actual conflict with

the system provided by the Bankruptcy [Code] of Congress").

 Any analysis must begin with "the basic assumption that Congress did not intend to displace state law." *Penn Terra*, 733 F.2d at 272–73 (*citing Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981)). "Proper respect, therefore, for the independent sovereignty of the several States requires that federal supremacy be invoked only where it is clear that Congress so intended. Statutes should therefore be construed to avoid pre-emption, absent an unmistakable indication to the contrary." *Id.* at 273. Although "any state legislation which frustrates the full effectiveness of federal law is rendered invalid by the Supremacy Clause," *Perez v. Campbell*, 402 U.S. 637, 652, 91 S.Ct. 1704, 1712, 29 L.Ed.2d 233 (1971), absent a conflict "between the state and bankruptcy laws, the law of the state where the property is situated governs questions of property rights." *Johnson*, 719 F.2d at 273.

 The operative term here is *conflict*. The Supreme Court has stated that such a conflict exists:

> when "compliance with both federal and state regulations is a physical impossibility," *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142–143, 83 S.Ct. 1210, 1217, 10 L.Ed.2d 248 (1963), or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S.Ct. 399, 404, 85 L.Ed. 581 (1941).

*Brown v. Hotel and Restaurant Employees and Bartenders Int'l Union Local 54*, 468 U.S. 491, 501, 104 S.Ct. 3179, 3185, 82 L.Ed.2d 373 (1984).

 Unless the Debtor can point to some provision in the Code which runs

contrary to the state law here, the pleading limitations in the Deficiency Judgment Act are not preempted. All that the Debtor offers on that score is an allusion to Code § 506. He argues that the amount of the deficiency ties in directly with the inevitable determination of the validity and extent of the Bank's lien against the Debtor's home. T–6. That issue will ultimately have to be decided in this case so it makes sense to do it as part of this petition. *Id.* 7.

That, however, does not demonstrate a conflict. It suggests only that it would be a more efficient use of judicial resource to do it that way. There is no preemption here. That being the case, does the Court otherwise have the power to consolidate the two determinations?

*The Extent of the Court's Equity Power*

 Section 105 of the Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). But the scope of the Court's power here is limited. This subsection does not "create substantive rights that would otherwise be unavailable under the Bankruptcy Code." *United States v. Pepperman,* 976 F.2d 123, 131 (3d Cir.1992). *Accord Internal Revenue Service v. Kaplan,* 104 F.3d 589, 597 (3d Cir.1997). *See generally Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988) (court's equitable powers "must and can only be exercised within the confines of the Bankruptcy Code"). The question becomes whether such use here is either "necessary" or "appropriate." *See In re Yadidi,* 274 B.R. 843, 848 (9th Cir. BAP 2002).

As to necessity, the Debtor offers no reason why the § 506 proceeding *must* be heard in conjunction with the petition. It may well husband judicial resources to do it that way, but no prejudice would result if the Court declined. In fact, that premise remains unestablished because the Bank is uncertain as to whether it will file a claim against the Debtor or proceed exclusively against his wife. *See* n. 2, *supra.* And that leads to the question of appropriateness. Concerns of comity dictate that the Court not transmogrify the state law procedure for the sake of expediency. *See Lake v. Arnold,* 232 F.3d 360, 368 (3d Cir.2000) (stating that principles of federalism and comity between state and federal courts require that federal courts respect the state's decision to determine the appropriate policies for its own judicial procedures). *Cf. Pearson v. Miller,* 211 F.3d 57, 67 (3d Cir.2000) ("A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy." *quoting United States v. King,* 73 F.R.D. 103, 105 (E.D.N.Y.1976)). Moreover, it is by no means certain that the Court will find that a deficiency results; indeed, as will be seen below, the Debtor challenges the Bank's valuation of the property. There is then no reason not to take the methodical approach and determine the deficiency first, and the lien amount second.

*The Substance of the Affirmative Defenses and Counterclaim*

 The Court now turns to what is contained in those allegations styled *Affirmative Defenses and Counterclaim.* Merely because an allegation or legal theory has a particular title does not mean that such a characterization is accurate. Pleadings under the Federal Rules are to be judged by their content or substance rather than by mere form or label. 5 Wright & Miller, *supra* at § 1286.

A careful reading of those allegations reveals that they pertain to the Bank's

handling of the property prior to the sheriff's sale.[5] It is alleged that the Bank began "exercising control" over the property in "early 2002" and that as of November 6, 2002 took "actual control over it." ¶¶ 4,5. From February 21, 2003 *onward*, the property was worth at least $1.85 million and the lesser figure put forth by the Bank ($1.25 million) is based on a liquidation value. ¶¶ 6,7. To the extent that they challenge the value of the property offered by the Bank, the allegations in the Affirmative Defenses and Counterclaim are an appropriate response to the petition.

But these new allegations go further: the Debtor asks that the Bank's claim against the Debtor *qua* guarantor be voided altogether on account of its mismanagement of the property. The Debtor talks of the Bank failing to "act in a commercially prudent manner" and of "breaching its fiduciary duty to the Debtor while in control of the property." ¶ 9. That is the reason that the property declined in value. ¶ 7. The just result, Debtor concludes, is to void any claim of the Bank in this bankruptcy. ¶ 9, Prayer.

Even assuming, for present purposes only, that the claims of negligence have merit, they are not germane to a petition to fix fair market value. As the petition's title suggests, the proceeding is intended to establish the value of the property when it was sold in order to determine the resulting deficiency. Debtor's claim of mismanagement and breach of fiduciary duty may explain *why* the property had a certain value, but they *do not controvert* that value. And if they did, they would constitute either an affirmative defense or counterclaim as both seek affirmative relief.[6]

*Summary*

For the reasons discussed above, the Affirmative Defenses and Counterclaim will be dismissed to the extent they seek affirmative relief. An appropriate order follows.

### ORDER

AND NOW upon consideration of the Plaintiff's Motion to Dismiss Debtor's Affirmative Defenses and Counterclaim Pursuant to F.R.C.P. 12(b)(6) and L.B.R. 7005–1, the Debtor's Answer, after hearing held on August 26, 2004, and for the reasons stated in the foregoing Opinion, it is

ORDERED that the Motion is Granted and that the Affirmative Defenses are stricken and that the Counterclaim is dismissed.

---

5. The sale occurred on December 15, 2003. Motion, ¶ 5.

6. That is not to say, however, that the Debtor may not raise these claim elsewhere. As Bank's counsel acknowledges, the Debtor remains free to press those claims. T–4.